**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 29 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SANDY ROUTT, DBA
Sandybeachgifts.com, DBA Sandys Beach,

Plaintiff - Appellant,

v.

AMAZON.COM, INC.,

Defendant - Appellee.

No. 13-35237

D.C. No. 2:12-cv-01307-JLR

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted July 9, 2014
Seattle, Washington

Before: ALARCÓN, KLEINFELD, and MURGUIA, Circuit Judges.

Sandy Routt appeals from the district court's dismissal of her first amended

complaint against Amazon.com ("Amazon"). We review de novo the district

court's decision to grant a motion to dismiss under Rule 12(b)(6) of the Federal

---

[*]  This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Rules of Civil Procedure. *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012).

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Routt alleges that certain "Amazon Associates" ("Associates"), participants in Amazon's affiliate-marketing program (the "Associate Program"), used her copyrighted photographs on their websites without her permission. Routt sued Amazon for copyright infringement and for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), on the theory that Amazon should be held liable for the conduct of its Associates. The district court dismissed Routt's first amended complaint after concluding that she had not alleged facts sufficient to establish that Amazon could be directly, contributorily, or vicariously liable for its Associates' conduct. In this appeal, Routt challenges only the district court's vicarious liability analysis.

I

"To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007) (footnote omitted).

Routt alleges, and Amazon acknowledges, that Amazon's relationships with its Associates are governed by an operating agreement. This agreement contains a

2

provision that prohibits Associates from infringing on another's copyright or trademark. The agreement also gives Amazon the right to "monitor[], crawl[], and otherwise investigat[e]" an Associate's website to ensure its compliance with the terms of the agreement. Amazon reserves the right to terminate noncompliant Associates.

This operating agreement gives Amazon some ability to affect the conduct of its Associates, at least to the extent that its Associates wish to remain in the Associate Program. "For vicarious liability to attach, however, the defendant must have the right and ability to *supervise* and *control* the infringement, not just affect it . . . ." *Id.* at 805.

A defendant has control over a third party's infringing conduct when the defendant can directly put an end to that conduct. For instance, in *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996), this court held that a swap meet operator could control a vendor's sale of pirated goods because the operator could exclude the vendor from the swap meet, thereby putting an immediate end to infringing sales taking place at the swap meet. *Id.* at 261–62. Similarly, in *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001), this court found a software operator could control its users' transmission of pirated music because it

3

had the ability block access to its software, thus ending the users' ability to transmit the infringing files. *Id.* at 1023–24.

Fonovisa and *Napster* stand in contrast to two cases involving Perfect 10, an adult magazine whose copyrighted photographs were widely infringed on the Internet. In the first, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), this court affirmed the district court's denial of a preliminary injunction that would have prevented Google from linking to third-party websites displaying Perfect 10's copyrighted images. We concluded that Perfect 10 was unlikely to prevail on its vicarious liability claim because it could not show that Google had the legal right to stop the direct infringement by third-party websites. *Id.* at 1175. Perfect 10 had argued that because the third-party websites participated in Google's AdSense program—an affiliate-advertising program similar to Amazon's Associate Program—Google had a contractual right to "monitor and terminate partnerships with entities that violate others' copyright[s]." *Id.* at 1173 (alteration in original) (quoting *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 858 (C.D. Cal. 2006)). This court rejected the argument, concluding that Google's "right to terminate an AdSense partnership does not give Google the right to stop direct infringement by third-party websites." *Id.* at 1173–74. As we noted, "An infringing third-party website can continue to reproduce, display, and distribute its infringing

copies of Perfect 10 images after its participation in the AdSense program has ended." *Id.* at 1174.

In the second case, *Perfect 10, Inc. v. Visa International Services Ass'n*, this court determined that Visa, Mastercard, and several affiliated banks were not vicariously liable for copyright infringement for processing payments to websites that misappropriated Perfect 10's photographs. 494 F.3d at 802. The credit card companies had a contractual right to stop processing payments to merchants that engaged in illegal conduct. *Id.* at 802. Perfect 10 argued that this right to terminate services amounted to a right and ability to supervise the infringing conduct. *Id.* at 804. This court disagreed, reasoning that "the mere ability to withdraw a financial 'carrot' does not create the 'stick' of 'right and ability to control' that vicarious infringement requires." *Id.* at 803.

Routt provides no basis for us to distinguish her case from the *Perfect 10* cases. Accepting the allegations in her complaint as true, Routt has pleaded that Amazon has a right to monitor its Associates' websites and that it may terminate the account of any Associate who has infringed on another's copyright. Routt, however, has not alleged that termination would put an immediate end to the Associates' infringement. As it was in the *Perfect 10* cases, the infringing conduct in this case occurs on third-party websites. Routt has alleged nothing to suggest

5

that an infringing Associate could not "continue to reproduce, display, and distribute its infringing copies of [Routt's] images after its participation in the [Amazon Associates] program has ended." *Amazon.com*, 508 F.3d at 1174. Thus, while Amazon may have had the right and ability to terminate the accounts of the infringing Associates, Routt has not adequately alleged that Amazon exercises any direct control over those Associates' activities. In the absence of such allegations, Amazon cannot be held vicariously liable for its Associates' conduct.

## II

Vicarious liability under the Lanham Act requires "a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties[,] or exercise joint ownership or control over the infringing product." *Visa*, 494 F.3d at 807 (quoting *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir.1992)). For the same reasons Amazon lacks the ability to supervise its Associates' conduct, it likewise lacks joint ownership or control over its Associates' infringing websites. Moreover, Amazon's operating agreement with its Associates expressly disclaims the existence of any actual partnership and states that neither party shall have the ability to make or accept any offers or representations on the other's behalf. Routt has not alleged any facts that would

6

establish an apparent partnership or demonstrate that the infringing Associates had apparent authority to bind Amazon. *See* Unif. P'ship Act § 308 (1997) ("If a person, by words or conduct, purports to be a partner, or consents to being represented by another as a partner, in a partnership or with one or more persons not partners, the purported partner is liable to a person to whom the representation is made, if that person, relying on the representation, enters into a transaction with the actual or purported partnership."); *NLRB v. Dist. Council of Iron Workers*, 124 F.3d 1094, 1099 (9th Cir. 1997) ("Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question."). Routt therefore has failed to state a claim for vicarious liability under the Lanham Act.

AFFIRMED.